UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-10218-RCL |
| | ) | |
| JESSE WILSON | ) | |
| | ) | |
| | ) | |

GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS

The government hereby files this memorandum in opposition to defendant Jesse Wilson's Motion to Suppress.  Wilson is charged in a one-count superseding indictment with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §922(g)(1).  He has moved to suppress the firearm and ammunition, claiming that the police officers who arrested him had no legitimate reason to stop the automobile in which he was a passenger.

For the reasons set forth below, this Motion should be denied.

**FACTUAL BACKGROUND**

On July 21, 2005, Brockton police officers were in an unmarked police car on patrol monitoring the activity at the intersection of Warren Ave. and Highland Street in Brockton, an area known for street level drug dealing, violent crimes and

1

prostitution.[1]  While stopped at the signal light at the
intersection of Legion Parkway and Warren Ave., the officers saw
a green car pull out of a gas station parking lot at a high rate
of speed.  The driver was going so fast and carelessly that he
drove into the opposite lane of traffic, causing a vehicle
traveling towards him to veer to the side of the road to avoid a
collision.  The green car continued down Highland and the police
officers activated their emergency lights.  The green car slowed
down, but continued driving.  As the police car got closer, the
green car pulled to the side of the road and stopped.  The police
officers approached the green car and observed the defendant
Jesse Wilson in the back seat with his hands on his lap and a
black T-shirt draped over his lap.  Wilson kept moving in his
seat and the officers asked him to get out of the car.  As he did
so, one of the police officers observed a gun in the back seat
where Wilson had been sitting.  The officer yelled "gun."  The
driver and front seat passenger both got out of the car and fled
on foot.  The driver, Andrew Nelson ("Nelson"), was apprehended
by other Brockton police officers and charged with, among other

---

[1]  The information concerning the traffic stop, arrest and
seizure of the gun and ammunition are based upon the narrative
contained in the Brockton Police Department Arrest Report, which
was prepared contemporaneously by one of the arresting officers,
Erik Hilliard, on July 21, 2005, and signed by him under the
pains and penalties of perjury.  A copy of the report is attached
as Exhibit A.

things, operating to endanger.[2]  Wilson also attempted to flee,
but was stopped and arrested after a struggle.  The officers
seized the gun and ammunition and Wilson was eventually indicted
for being a felon in possession of those items.

On October 27, 2005, Nelson appeared in the Brockton
District Court and admitted to sufficient facts on a charge of
Negligent Operation of a Motor Vehicle, as well as to Disturbing
the Peace and Failing to Stop for a Police Officer, all in
connection with the traffic stop on July 21, 2005.  See Record of
Criminal Case No. 0515CR004767 from the Brockton District Court,
attached as Exhibit B.  As a result, Nelson was adjudged "guilty"
of the Negligent Operation of a Motor Vehicle charge and
sentenced to probation.[3]

During the October 27, 2005 plea hearing, Nelson was sworn
and the judge conducted a detailed colloquy to make sure Nelson
understood the significance of admitting to sufficient facts and
the various rights Nelson would thereby be giving up.[4]  The Court
advised Nelson that "when you admit to sufficient facts for a

---

[2]     The front seat passenger, an unknown female, was not
caught or identified.

[3]     The other two counts were continued without a finding.

[4]      Attached as Exhibit C is a copy of the audiocassette
recording of the October 27, 2005 hearing.  The information
contained in this paragraph is derived from that recording, which
has not been transcribed.  The tape was received by the
government on May 31, 2006, and a copy was mailed to Nelson's
attorney on June 1, 2006.

3

finding of guilty that's similar to a guilty plea.  It allows a guilty finding to enter either now or some future time without a trial.  It allows you to be sentenced as provided by law and you give up some important rights when you do that."  The court then detailed the rights Nelson would be giving up, including the right to a jury trial, to have the government prove the charges against him beyond a reasonable doubt, to be represented by counsel at trial and to not testify at trial.  The court inquired of Nelson's education and also determined that Nelson had not ingested anything which might impair his ability to understand what he was doing.  The court advised Nelson that his admission would permit the court to accept the facts as stated by the government as true, and Nelson responded that he understood.  The prosecutor thereafter informed the court of what had occurred on the evening of July 21, 2005.[5]  Among other things, he stated that the Brockton police officers "noticed a motor vehicle pull out of a gas station at a high rate of speed" and that it "pulled out wide, so it was in the other lane of travel, causing some traffic to divert itself to avoid being struck by this motor

---

[5]     During the hearing, Nelson also admitted to sufficient facts in connection with two other unrelated complaints, involving allegations of assault and battery and threatening harm.  A fourth complaint, alleging possession of a Class D substance with intent to distribute, was not resolved at that hearing.  Nelson pleaded guilty to the drug charge on January 17, 2006 and was sentenced to 90 days in jail.  See Record of Criminal Case No. 0515CR006276, attached as Exhibit D.

vehicle." After the prosecutor finished stating the offense conduct for the several charges, the court asked Nelson whether he understood that his admission "lets me accept those facts as true?" Nelson responded "yes." The court then found Nelson guilty on the charge of negligent operation of a motor vehicle and continued without a finding the other two charges from July 21, 2005. At no time during the hearing did Nelson disagree with the prosecutor's statement of the offense conduct.

### WILSON'S MOTION TO SUPPRESS

On March 15, 2006, Wilson filed a motion to suppress the gun and ammunition, asserting that they were seized in violation of the Fourth Amendment to the U.S. Constitution. In support of the motion, Wilson relies exclusively on Nelson's affidavit which asserts, contrary to the police report and his own admissions in Brockton District Court, that Nelson had been driving at a lawful rate of speed prior to the police stop and at no time committed a driving violation. According to Nelson, he "crossed over from Legion Parkway to Highland Street with the green light at a lawful rate of speed. About 3 or 4 houses down Highland Street, I stopped to say hello to an aquintance (sic) standing in front of a rooming house. At this time, an unmarked cruiser came up behind and flashed its lights and siren. I pulled over to the side of the road about 3 or 4 houses away so as to not block the street." Nelson aff. Nelson further claimed that he had

5

"admitted to sufficient facts to driving to endanger" only
because he "had other cases pending and just wanted it to go
away." Id.

**LAW AND ARGUMENT**

Based on Nelson's version of events, Wilson argues that the
police officers did not have a reasonable suspicion that a crime
or traffic violation had occurred and thus the vehicle stop was a
violation of the Fourth Amendment.  Wilson seeks suppression of
the fruits of the stop, that being the gun and ammunition.

The government opposes this motion because the Brockton
police report and Nelson's own admission under oath to the
negligent operation of a motor vehicle charge together establish
that the police officers had a reasonable suspicion that a
traffic violation had occurred which justified the vehicle stop.
In the alternative, however, even if the Court were to credit
Nelson's new version of events as described in his affidavit,
that statement reflects that Nelson was potentially in violation
of Brockton traffic ordinances and thus the police were similarly
justified in stopping his car to investigate further.

A police officer is justified in stopping a vehicle to
investigate as long as the stop "was supported by a reasonable
and articulable suspicion that the vehicle was traveling in
violation of a traffic law." United States v. Fox, 393 F.3d 52,
59 (1st Cir. 2005), citing Whren v. United States, 517 U.S. 806,

6

810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.") and United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001) (A traffic stop "must be supported by a reasonable and articulable suspicion of criminal activity.").

Here, the police officers observed the car leaving the gas station at an excessive rate of speed, swerving into the oncoming lane of traffic, and causing another car to pull to the side to avoid a collision.  For those actions, Nelson was charged with negligent operation of a motor vehicle.  Nelson later admitted, under oath, to the same version of events as contained in the police report and he was adjudged guilty.[6]  Since the evidence establishes that Nelson was driving his car negligently, the police officers were justified in stopping the car.

Assuming, arguendo, that the Court were to reject this version of the events of July 21, but instead credit Nelson's new version as set forth in his affidavit, Wilson's motion should still be denied.

According to Nelson's affidavit, he stopped his car to say hello to an acquaintance, and when the police flashed their

---

[6]  Nelson's admissions in the Brockton District Court may be treated by this Court as admissions, although they may not be given collateral estoppel effect.  United States v. One Parcel of Real Property, 900 F.2d 470 473 (1st Cir. 1990); Aetna Casualty & Surety Company v. Niziolek, 395 Mass. 737, 750 (1985).

lights at him, he had to pull over to the side of the road "so as
to not block the street."  Brockton Ordinance §12-46 states that
"No person shall drive in such a manner as to obstruct
unnecessarily the normal movement of traffic upon any street or
highway."[7]  Brockton Ordinance §12-71 provides that "No person
shall stand or park . . .  in any of the following places: . . .
(f) Upon any roadway where the parking of a vehicle will not
leave a clear and unobstructed lane at least ten (10) feet wide
for passing traffic."  Nelson's version of events establishes
that he was potentially in violation of Brockton Ordinances §12-
46 and/or §12-71.  Therefore, the police had cause to pull him
over and investigate further.

     That Nelson was potentially in violation of a different
statute or ordinance than the ones for which he was cited, that
is sufficient to uphold the stop against a Fourth Amendment
challenge.  Goodwin v. Johnson, 132 F.3d 162, 173 (5th Cir. 1998)
("So long as a traffic law infraction that would have objectively
justified the stop had taken place, the fact that the police
officer may have made the stop for a reason other than the
occurrence of the traffic infraction is irrelevant for purposes
of the Fourth Amendment . . ."); United States v. Lopez-Moreno,
420 F.3d 420, 431-32 (5th Cir. 2005) (holding that even if

-----

     [7]     A copy of the relevant Brockton Ordinances are
attached as Exhibit E.

officer's subjective motivation for initiating the vehicle stop was his mistaken view that the defendant was violating a specific statute, "the fact that it was objectively reasonable to suspect that [the defendant] was violating [a different statute] means that the initial stop passes constitutional muster."); see also, United States v. Jones, 432 F.3d 34, 40–41 (1st Cir. 2005) ("[T]he probable cause inquiry [for an arrest] is not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest. . . . If, on the facts known to the arresting officers, there was probable cause to believe he was committing another crime, the arrest was valid."). The Jones holding relied on Devenpeck v. Alford, 543 U.S. 146 (2004). In that §1983 action, the Supreme Court reversed a Ninth Circuit decision which had held that an arresting officers could not have had probable cause to arrest because the crime cited at the time of arrest was not in fact a crime in the state of Washington, and the crimes actually charged were not "closely related" to the offense stated. Devenpeck, 543 U.S. at 152. The Supreme Court stated that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. . . ." and "his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Id.

9

at 153.  The Court stated further that, "[a]s we have repeatedly explained, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."  Id.

Here, if Nelson's new version of events is credited, then those "facts" would objectively have provided the police with sufficient reason to stop Nelson's vehicle to investigate further the potential violations of Brockton Ordinances prohibiting unreasonable obstruction of traffic and parking in a roadway without leaving a clear and unobstructed lane.

**Wilson's Motion Should Be Denied Without A Hearing**

A criminal defendant is not entitled, as a matter of right, to an evidentiary hearing on every motion that he chooses to file.  United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996). "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record."  Id. at 603.  In particular, evidentiary hearings on motions to suppress are required only when a defendant makes a sufficient showing that an illegal search has occurred.  United States v. Lewis, 40 F.3d 1325 (1st cir. 1994).  "To make this showing the defendant must allege facts, sufficiently definite,

detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." Id.

First, Nelson's self-serving affidavit which contradicts his own previous sworn admissions should be deemed by the Court to be insufficient to show that material facts are in doubt.  Second, Nelson's affidavit describes an alternative version of events which would have provided the police with a reasonable suspicion to believe that traffic ordinances were being violated and thus cause to stop the vehicle.  In either event, Wilson has failed to make a sufficient showing that an illegal search occurred which would merit an evidentiary hearing.[8]

**CONCLUSION**

The police had probable cause to believe that the driver of the car in which Wilson was a passenger had committed traffic violations justifying a stop of that vehicle.  There was no constitutional violation and Wilson's motion to suppress should

---

[8]     If the Court grants Wilson an evidentiary hearing, the government requests that Nelson be required to testify and be subject to cross-examination before the government presents its evidence.

11

be denied without a hearing.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                    By:    /s/ Mark J. Balthazard
                           MARK J. BALTHAZARD
                           Assistant U.S. Attorney

### Certificate of Service

        I hereby certify that this document filed through the ECF
system will be sent electronically to the registered participants
as identified on the Notice of Electronic Filing (NEF) and paper
copies will be sent to those indicated as non registered
participants on June 14, 2006.

                            /s/ Mark J. Balthazard
                           MARK J. BALTHAZARD
                           Assistant U.S. Attorney

12

| OBTN TBRO000042850 | **BROCKTON POLICE DEPARTMENT** *Arrest Booking Report* | Case No. 05008848 |
|---|---|---|

### ARRESTEE

| Arrestee Name (Last, First, Middle Initial) **WILSON, JESSIE** | Arrest No. 00051478 | Social Security No. - - | Caution |
|---|---|---|---|

| Address **475/MASSACHUSETTS AVE, BOSTON, MA** | Scars, tattoos, etc. **SCAR ON CHEST RT SDE** |
|---|---|

| Sex M | Race B | Height 509 | Weight 180 | Hair BLK | Eyes BRO | Build MED | Complexion MEDIUM | Marital Status SINGLE | D.O.B. 04/20/1980 | Age 25 | Place of Birth BOSTON,MASS |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Father's Name **JESSIE WILSON** | Mother's Maiden Name **WALKER** | Wife's Maiden Name | Husband's First Name | Weekly Wage |
|---|---|---|---|---|

| Occupation **UNEMPLOYED** | Employer | Alias/Nickname 1 |
|---|---|---|

| Alias/Nickname 2 | Alias/Nickname 3 |
|---|---|

### CHARGE

| Charge(s) | MGL Chapter/Section | Warrant Number |
|---|---|---|
| 1) UNL CARRY FIREARM | 289-10A | HANDGUN |
| 2) UNL POSS AMMUNITIO | 269-10O7 | |
| 3) RESISTING ARREST | 268-32B | |
| 4) FALSE NAME/SS# PO | 268-34A | JOHNNY WALKE |

W&S        PSN

| Arrest Date 07/21/2005 | Time 17:20 | Arrest Location **HIGHLAND & GLENWOOD** | Arresting Officer 1 **SMITH JAMES** | Arresting Officer 2 **HILLIARD ERIK** | Domestic Violence? **NO** |
|---|---|---|---|---|---|

### CONTROL

| Booking Date 07/21/2005 | Time 18:54 | Booking Officer **O'MALLEY, PATRICK** | Cell No. 3 | Matron | Police Department on Warrant |
|---|---|---|---|---|---|

| Rights given by **LINEHAN RICHARD** | Visible Injuries? **NO** | Comments |
|---|---|---|

| Searched by **SMITH JAMES** | No. Codefendants 1 | Codefendant(s) Name(s) **NELSON,ANDREW** |
|---|---|---|

### JUVENILE

| Person to notify | Relationship | Address | Telephone No. | Date/time notified |
|---|---|---|---|---|

| Probation Officer | Release or Hold | Notified by | Juvenile released to (Signature) |
|---|---|---|---|

### RELEASE

I was informed of my right to remain silent, to use a telephone, at my own expense, for the purpose of communicating with family or friends, to arrange bail or to call an attorney.

Arrestee Signature  X

| Telephone used?(yes or no) | Bail Amount | Date/time Released | Released by |
|---|---|---|---|

```
!--------------------------!              !----------------------!
! Offense/Incident         !  BROCKTON POLICE DEPARTMENT  ! Case No.            !
!                          !       ARREST REPORT          !                     !
! UNL CARRY FIREARM        !                              !    05008848         !
!--------------------------------------------------------------------------------!
! Offense Date and Time ! Day ! Arrest Date and Time ! Day ! Domestic Violence?!
! 07/21/2005   18:00    ! Thr ! 07/21/2005   17:15   ! Thr !        NO          !
!--------------------------------------------------------------------------------!
! Location of Offense       ! Apt ! Sector ! Wrd ! Prec ! Arresting Officer     !
! HIGHLAND & GLENWOOD ST     !     !   CC   !  2  !  2B  ! HILLIARD ERIK         !
!--------------------------------------------------------------------------------!
! Defendant's Name                  ! Sex ! Race ! Hgt ! Wgt ! D.O.B.     ! A/J  !
! NELSON        ANDREW     K !  M  !  B  ! 506 ! 170 ! 05/18/1985 ! ADULT !
!--------------------------------------------------------------------------------!
! Defendant's Address                       ! Social Security No.               !
! 31 LINDSEY ST #1 DORCHESTER MA             !    011689303                      !
!--------------------------------------------------------------------------------!
! Offense(s) Charged      A !              B !              C                    !
! UNL CARRY FIREARM    ! UNL POSS AMMUNITIO  ! RESISTING ARREST                  !
!                      D !                 E !                 F                 !
! FALSE NAME/SS# PO    ! FL STOP SIG OF PO   ! OP MV TO ENDANGER                 !
!--------------------------------------------------------------------------------!
! Weapon(s) Used          ! Location of Arrest                                   !
!                         ! HIGHLAND ST AND GLENWOOD ST                          !
!--------------------------------------------------------------------------------!
! Co-Defendant            ! Address                      ! D.O.B.                !
! WILSON       JESSIE     ! 475/MASSACHUSETTS AVE BOSTON M ! 04/20/1980          !
!--------------------------------------------------------------------------------!
! Victim 1                ! Sex ! Race ! D.O.B      !                            !
! SMITH        JAMES      !  M  !  W   !            !                            !
!--------------------------------------------------------------------------------!
! Residence Address                    ! Res Telephone ! Bus Telephone           !
! BPD                                   !               ! 941-0234               !
!--------------------------------------------------------------------------------!
! Victim 2                ! Sex ! Race ! D.O.B      !                            !
! HILLIARD     ERIK       !  M  !  B   !            !                            !
!--------------------------------------------------------------------------------!
! Residence Address                    ! Res Telephone ! Bus Telephone           !
! BPD                                   !               ! 941-0234               !
!--------------------------------------------------------------------------------!
! Type of Property  ! Make  ! Model  ! Color 1 ! Color 2 ! Value                 !
! FIREARMS/ACCESSORI ! H&R  ! HR922  !  SIL    !  SIL    ! $                     !
!--------------------------------------------------------------------------------!
! Type of Property  ! Make  ! Model  ! Color 1 ! Color 2 ! Value                 !
! FIREARMS/ACCESSORI !      !        !         !         ! $                     !
!--------------------------------------------------------------------------------!
! Witness 1               ! Sex ! Race ! D.O.B      !                            !
! O'BRIEN       KRISTEN   !  F  !  W   !            !                            !
!--------------------------------------------------------------------------------!
! Residence Address                    ! Res Telephone ! Bus Telephone           !
! BPD                                   !               ! 941-0200               !
!--------------------------------------------------------------------------------!
! Witness 2               ! Sex ! Race ! D.O.B      !                            !
! VAZQUEZ       CARMEN    !  F  !  U   !            !                            !
!--------------------------------------------------------------------------------!
! Residence Address                    ! Res Telephone ! Bus Telephone           !
! BPD                                   !               ! 941-0200               !
!--------------------------------------------------------------------------------!
```

| Offense/Incident | BROCKTON POLICE DEPARTMENT | Case No. |
|---|---|---|
| UNL CARRY FIREARM | ARREST REPORT | 05008848 |

| Witness 3 | | Sex | Race | D.O.B | |
|---|---|---|---|---|---|
| SMITH | ROBERT | M | W | | |

| Residence Address | Res Telephone | Bus Telephone |
|---|---|---|
| BPD | | 941-0200 |

| Witness 4 | | Sex | Race | D.O.B | |
|---|---|---|---|---|---|
| SNIGER | JAMES | M | W | | |

| Residence Address | Res Telephone | Bus Telephone |
|---|---|---|
| BPD | | 941-0200 |

| Witness 5 | | Sex | Race | D.O.B | |
|---|---|---|---|---|---|
| MATUKAS | DANIEL | M | W | | |

| Residence Address | Res Telephone | Bus Telephone |
|---|---|---|
| BPD | | 941-0200 |

| State & Reg. | Year | Make | Model | Color | Vehicle ID Number | Status |
|---|---|---|---|---|---|---|
| MA 49DM53 | 98 | PONT | GRA | GRN | | |

**Narrative:**

```
 1  While assigned to the 4-12 Detective Division Det. Smith and myself
 2  were on patrol in the area of Legion Parkway in an unmarked Police
 3  vehicle monitoring the activity at the gas station at the intersection
 4  of Warren Av. and Highland St. This particular area is known for its
 5  street level drug dealings, prostitution and violent crimes. As we
 6  were stopped at the signal light (W) at the intersection of Legion PY
 7  and Warren Av. we observed a green motor vehilce pull out of the gas
 8  station parking lot, located at Warren Av and Highland at a high rate
 9  of speed. The vehicle fled from the lot taking a right onto Highland
10  St with a sense of urgency. The car pulled out of the lot so quickly
11  and carelessly he drove into the opposite lane of traffic causing a
12  vehicle which was travelling west to pull to the side of the road to
13  avoid an impact. The vehicle continued west, passed a vehilce on the
14  left which was operating in a normal manner. At this time Det. Smith
15  activated the cruisers emergency lights and the vehicle pulled in
16  front of #47 Highland St. The vehicle continued west on Highland St
17  at a very slow pace, even though he noticed our lights. As we got
18  close to the vehicle it pulled onto the side walk at the intersection
19  of Highland St. and Glenwood St. I approached the passengers side and
20  observed the right rear passenger (later Id'd as Wilson) with his
21  hands on his lap with a black T-shirt drapped over his lap. As I got
22  closer to the passengers rear door, I observed the Wilson moving and
23  lean towards the driver. At this same time I observed the passenger
24  in the front (unknown female) make motions towards the glove box. I
25  yelled to the rear passenger to stop moving and put his hands where I
26  could see them. At time I asked the rear passenger what did he move
27  from his lap. The rear passenger stated he was just moving his T-shirt
28  (color black) I ordered the man to stop moving and I ordered the
```

| Offense/Incident | | Case No. |
|---|---|---|
| UNL CARRY FIREARM | BROCKTON POLICE DEPARTMENT ARREST REPORT | 05008848 |

```
29 | driver (later Id'd as Nelson) to shut off the vehicle. At this time
30 | Det. Smith approached the driver and asked for his license and
31 | registration. It should be noted that as I approached Det. Smith, who
32 | was a few moments behind me as I approached the vehicle stated both
33 | the rear passenger and the driver were fixated on me and my location
34 | and my approach. In fact when Det. Smith asked Nelson for his license
35 | he startled Nelson. At this time I asked the suspect for his name. He
36 | stated "Justin" The rear passenger kept moving in his seat and I asked
37 | him to step from the vehicle. As I opened the door the rear passenger
38 | "Wilson" step out with both feet, which I immediately felt as if he
39 | were going to run. I grabbed his right arm to try to get in and
40 | control him. As I escorted Wilson from the vehicle I observed him to
41 | not have on the black T-shirt and he was sweating. I looked in his
42 | face and it was panicked. At this time Det. Smith yelled "Gun!!!!" and
43 | Wilson immediately pushed off on me and tried to even push me into
44 | the bushes that were at the corner where we had the vehicle stopped.
45 | Wilson fought violently twisting, turning failing his free arm, even
46 | using his body weight to push me off balance. At this time Det. Smith
47 | ran to my aid and grabbed a hold of the now very slippery Wilson. As
48 | we continued to subdue Wilson, Det. Smith grabbed hold of Wilson's
49 | upperbody, my left arm was trapped between Smith's arm and Wilson's
50 | torso. At this moment I felt a violent tug on my right side where my
51 | firearm was located. Wilson grabbed my nylon mini-flashlight pouch and
52 | jerked it. It should be noted that my holstered firearm was located
53 | directly in front my flashlight pouch approximately 2 inches apart. I
54 | knew that Wilson was attempting to grab my firearm, but grabbed the
55 | wrong item. While my left arm was still pinned I grabbed my mini
56 | flashlight, which was hanging from its pouch, removed it and in
57 | an attempt to remove Wilson's grip from my issued equipment, I struck
58 | him on the side of his head and immediately again on the other side of
59 | his head, causing him to remove his grip from my firearm holster and
60 | flashlight pouch. The entire time I gave commands to Wilson to let go
61 | and to get to the ground. After being struck the second time Wilson
62 | was guided from the bushes where we were fighting with the defendant
63 | supported and forced to the pavement with an arm bar take down by Det.
64 | Smith where he was placed into a rear wrist lock and handcuffed using
65 | a non compliant handcuffing technique. It should also be noted that
66 | as soon as Det. Smith yelled "Gun" the driver and the front passenger
67 | got out of the vehicle and fled the area on foot running north on
68 | Glenwood St. As back up units arrived Ofc. Robert Smith asked were we
69 | OK I stated yes, and gave a description of the driver and female.
70 | Prior to Ofc. R Smith giving out the other suspect information, Ofc.
71 | O'Brien asked were we looking for another party who fled on foot. Ofc.
72 | O'Brien and the responding cruisers were given the description of a
73 | black male with a black shirt. Ofc. O'Brien reponded by saying she had
74 | the other suspect running towards Moreland St. The other suspect Id'd
75 | as Andrew Nelson ran through the yard of 49 Newbury St, through the
76 | yard of 20 Moreland St, across the street to 15 Moreland St through
77 | another backyard and was placed under arrest in the area of 20
78 | Lexington St. The party the cruiser team had detained was the same
79 | party who fled from the vehicle we had stopped (Ma 49DM53 a green
```

| 104 | Unlawful Possession of Ammunition, Resisting Arrest and false name to |
| 105 | a Police Offcier. |
| 106 | Nelson charged with the following: Failure to stop signal Police |
| 107 | Officer, Operating to endanger, and Disturbance. |
| 108 | Citaion issued to operator Mr.Nelson  M0508532 and m/v towed   ] |

Signed under the pains & penalties of perjury. (Arresting Officer Signature)

*Sm R H* *#291*

| Report Date | Supervisors Signature |
| 7/21/05 | *Sgt G Rinehan 072105 #245* |

| RECORD OF CRIMINAL CASE | DOCKET NO. 0515 CR 004767 | Trial Court of Massachusetts District Court Department |
|---|---|---|

| DEFENDANT NAME | COURT NAME & ADDRESS |
|---|---|
| ANDREW K NELSON | BROCKTON DISTRICT COURT |
| **DEFENDANT ALIAS(ES)** | 215 MAIN ST P.O. BOX 7610 BROCKTON MA 02303-7610 (508) 587-8000 |

| DEFENDANT ADDRESS | CITY / TOWN | STATE | ZIP CODE |
|---|---|---|---|
| 221 PINE GROVE DRIVE | BROCKTON | MA | 02301 |

| SEX | DATE OF BIRTH | CITY OF BIRTH | STATE OF BIRTH | SOCIAL SECURITY NO. |
|---|---|---|---|---|
| M | ■■■ | DORCHESTER | MA | ■■■ |

| MOTHER'S MAIDEN NAME | FATHER'S NAME |
|---|---|
| PARKINSON, MARI | NELSON, MICHAEL |

| PCF NO. | SID NO. | DRIVERS LICENSE NO. | LICENSE STATE |
|---|---|---|---|
| 2524459 | | | |

## CASE INFORMATION

| NO. COUNTS | POLICE DEPT | POLICE INCIDENT NO. | OFFENSE LOCATION | ARREST DATE | MV CITATION NO. |
|---|---|---|---|---|---|
| 3 | BRO | 05008848 | BROCKTON | 7/21/05 | M0508532 |

| CURRENT DEFENSE ATTORNEY | ATTORNEY TYPE |
|---|---|
| MARK S. MACHADO | APPOINTED - INDIGENT |

| CURRENT PROSECUTOR | COMPLAINANT |
|---|---|
| | CESARINI, SGT. ANDREW H. |

## OFFENSE AND JUDGMENT INFORMATION

COUNT:  1 OFFENSE DATE: JULY 21, 2005
 90/24/E        NEGLIGENT OPERATION OF MOTOR VEHICLE

JUDGMENT DATE: 10/27/05               JUDGMENT JUDGE: HON. JAMES F. X. DINNEEN
JUDGMENT METHOD: ADM SUFF FACTS       JUDGMENT: GUILTY
PROBATION START DATE: 10/27/05               PROBATION END DATE:  1/26/06
SPECIAL CONDITIONS:
     SU SUPERVISED PROBATION ORDERED
     PM PAY MONIES ON ATTACHED "NOTICE TO DEFENDANT" TIMELY
     SP PAY ANY CHILD SUPPORT ORDER, AS DEFINED IN GL 119A §1A
     VR ALLOW PROBATION TO VISIT RESIDENCE WHEN HE/SHE REQUIRES
     AM COMPLETE ANGER MANAGEMENT PROGRAM:
          APPLIES TO COUNTS 2 AND 3

COUNT:  2 OFFENSE DATE: JULY 21, 2005
 272/53/G        DISTURBING THE PEACE

JUDGMENT DATE: 10/27/05               JUDGMENT JUDGE: HON. JAMES F. X. DINNEEN
JUDGMENT METHOD: ADM SUFF FACTS       JUDGMENT: CONT W/O FINDING;SUF FCTS
PROBATION START DATE: 10/27/05               PROBATION END DATE:  1/26/06

COUNT:  3 OFFENSE DATE: JULY 21, 2005
 90/25/D        POLICE OFFICER, FAIL STOP FOR

JUDGMENT DATE: 10/27/05               JUDGMENT JUDGE: HON. JAMES F. X. DINNEEN
JUDGMENT METHOD: ADM SUFF FACTS       JUDGMENT: CONT W/O FINDING;SUF FCTS
PROBATION START DATE: 10/27/05               PROBATION END DATE:  1/26/06
-------------------------------------------------------------------------
-------------------------------------------------------------------------
                         BAIL/BOND INFORMATION
-------------------------------------------------------------------------

BAIL TYPE              BOND AMT SET    CASH AMT SET DATE SET JUDGE

CASH ONLY                             $500.00  7/22/05 JOHN M. STELLATO

| PAGE | DATE RECORD PRINTED | A TRUE COPY ATTEST | CLERK MAGISTRATE |
|---|---|---|---|
| 1 | 3/28/06 | | *Kenj P. Geesler* |

CRF21A 3/28/06 10:53 AM

| RECORD OF CRIMINAL CASE | 0515 CR 004767 | Trial Court of Massachusetts<br>District Court Department |
|---|---|---|

```
-------------------------------------------------------------------
                     FINES/FEES/COSTS ASSESSED
-------------------------------------------------------------------
```

| COUNT # | FEE CODE DESC | AMOUNT ASSESSED | AMOUNT PAID/WAIVED | BALANCE DUE |
|---|---|---|---|---|
| | COUNSEL FEE | $150.00 | $150.00 | $.00 |
| | TOTAL | $150.00 | $150.00 | $.00 |

```
-------------------------------------------------------------------
                        PAYMENT HISTORY
-------------------------------------------------------------------
```

| RECEIPT NO. | RECEIPT DATE | RECEIPT AMOUNT | METHOD OF PAYMENT |
|---|---|---|---|
| 159206 | 1/17/06 | $150.00 | WAIVED |

```
-------------------------------------------------------------------
                          BAIL HISTORY
-------------------------------------------------------------------
```

RECEIPT#:   24367      DATE POSTED: 07/25/2005    AMOUNT POSTED:    $500.00
                       METHOD: CASH

    RETURNED:              10/27/2005       $500.00  CHECK

```
-------------------------------------------------------------------
                         DOCKET ENTRIES
-------------------------------------------------------------------
```

| DATE | CODE | DOCKET ENTRY | JDG/MAG | ACTION DATE |
|---|---|---|---|---|
| 7/22/05 | AC | APPLICATION FOR COMPLAINT FILED | | |
| 7/22/05 | ZCI | COMPLAINT ISSUED | KML | |
| 7/22/05 | ARR | ARRAIGNMENT SCHEDULED FOR | | 7/22/05 |
| 7/22/05 | PI | PROBATION INTAKE FORM PRINTED | KML | |
| 7/22/05 | BRW | BAIL REVOCATION WARNING (276 §58) GIVEN DEFT | JMS | |
| 7/22/05 | ARRH | ARRAIGNMENT HELD | JMS | 7/22/05 |
| 7/22/05 | PT | PRETRIAL HEARING SCHEDULED FOR | | 9/14/05 |
| 7/22/05 | CAI | COUNSEL APPOINTED FOR INDIGENT DEFENDANT | JMS | |
| 7/22/05 | | 637285   MACHADO, MARK S. | | |
| 7/22/05 | MITB | MITTIMUS IN LIEU OF BAIL TO | | |
| 7/22/05 | | PJ   : PLYMOUTH JAIL | | |
| 9/14/05 | PTCH | PRETRIAL CONFERENCE HELD | PCD | 9/14/05 |
| 9/14/05 | PTRF | PRETRIAL CONFERENCE REPORT FILED | PCD | |
| 9/14/05 | JT | JURY TRIAL SCHEDULED FOR | PCD | 10/27/05 |
| 9/14/05 | | PLEA TENDERED & WITHDRAWN | | |
| 10/27/05 | AW | ALIEN WARNING (279 §29D) GIVEN DEFENDANT | FXD | |
| 10/27/05 | ASF | ADMISSION TO SUFF FACTS ACCEPTED AFTER COLLOQ | | |
| 10/27/05 | COLL | GUILTY PLEA/ASF COLLOQUY GIVEN | FXD | 10/27/05 |
| 10/27/05 | P | PROBATION UNTIL | | 1/26/06 |
| 10/27/05 | JE | JUDGMENT ENTERED | FXD | |
| 10/27/05 | ARMV | ABSTRACT SENT TO REGISTRY OF MOTOR VEHICLES | FXD | 10/27/05 |
| 10/27/05 | PCFI | PROBATION CONDITIONS FORM ISSUED | | |
| 10/27/05 | PSFI | PROBATION SUPERVISION TERMS FORM ISSUED | | |
| 1/17/06 | BF | BROUGHT FORWARD | KML | 1/26/06 |
| 1/17/06 | | AT THE REQUEST OF APO L. HANLEY | | |
| 1/17/06 | SR | STATUS REVIEW SCHEDULED FOR | KML | 1/17/06 |
| 1/17/06 | AIC | ACTION IN COURT FORM | KML | |
| 1/17/06 | JHH | JUDGE'S HEARING HELD | DGN | 1/17/06 |
| 1/17/06 | ZPTD | PROBATION TERMINATED; DEFENDANT DISCHARGED | DGN | |

A True Copy Attest:

| PAGE | DATE DOCKET PRINTED | A TRUE COPY ATTEST | CLERK MAGISTRATE |
|---|---|---|---|
| 2 | 3/28/06 | | |

CRF21B 3/28/06 10:53 AM

Exhibit C is an audio cassette tape, certified by the
Commonwealth of Massachusetts District Court, of an October 27,
2005 plea hearing of Andrew Nelson.  The cassette, marked as
Exhibit C, will be filed separately with the Court (see attached
letter), and a copy has been sent to the attorney for the
defendant.  The cassette has the following information on the
label:

Andrew Nelson
Brockton 4767       10-27-05
Tape 402-88-975

Serial No. 213568

  Í                                           **U.S. Department of Justice**

                                                            ***Michael J. Sullivan***
                                                            *United States Attorney*
                                                            *District of Massachusetts*

---

*Main Reception: (617) 748-3100*                    *John Joseph Moakley United States Courthouse*
                                                    *1 Courthouse Way*
                                                    *Suite 9200*
                                                    *Boston, Massachusetts 02210*

                                                    June 14, 2006

**BY HAND**

Lisa Hourihan
Deputy Clerk
United States District Court
District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way - Suite 2300
Boston, MA 02210

      Re:    <u>United States v. Jesse Wilson</u>
               <u>Cr. No. 05-10218-RCL</u>

Dear Ms. Hourihan:

      Enclosed is an audio cassette tape marked Exhibit C for filing in the above-referenced case.  I have today filed by ECF Government's Memorandum in Opposition to Defendant's Motion to Suppress, to which the tape is an exhibit.  I have filed by ECF a notice with the Memorandum referencing the tape and the fact that it is being filed separately with the Clerk's Office.

      If you have any questions about this, please call me at 617-748-3208.

                    Very truly yours,

                    MICHAEL J. SULLIVAN
                    United States Attorney

          By:   _____

                    MARK J. BALTHAZARD
                    Assistant U.S. Attorney

Enc.
cc:   Paul Garrity, Esq.
       14 Londonderry Rd.
       Londonderry, NH 03053

| Case 1:05-cr-10218-RCL RECORD OF CRIMINAL CASE | DOCKET NO. 0515 CR 006276 | Trial Court of Massachusetts District Court Department |
|---|---|---|

| DEFENDANT NAME<br>ANDREW K NELSON<br><br>DEFENDANT ALIAS(ES) | COURT NAME & ADDRESS<br>BROCKTON DISTRICT COURT<br>215 MAIN ST P.O. BOX 7610<br>BROCKTON MA 02303-7610<br>(508) 587-8000 |
|---|---|

| DEFENDANT ADDRESS<br>221 PINE GROVE DRIVE | CITY / TOWN<br>BROCKTON | STATE<br>MA | ZIP CODE<br>02301 |
|---|---|---|---|

| SEX<br>M | DATE OF BIRTH | CITY OF BIRTH<br>DORCHESTER | STATE OF BIRTH<br>MA | SOCIAL SECURITY NO. |
|---|---|---|---|---|

| MOTHER'S MAIDEN NAME<br>PARKINSON, MARI | FATHER'S NAME<br>NELSON, MICHAEL |
|---|---|

| PCF NO.<br>2524459 | SID NO. | DRIVERS LICENSE NO. | LICENSE STATE |
|---|---|---|---|

## CASE INFORMATION

| NO. COUNTS<br>1 | POLICE DEPT<br>SP | POLICE INCIDENT NO. | OFFENSE LOCATION<br>BROCKTON | ARREST DATE<br>9/17/05 | MV CITATION NO. |
|---|---|---|---|---|---|

| CURRENT DEFENSE ATTORNEY<br>MARK S. MACHADO | ATTORNEY TYPE<br>APPOINTED - INDIGENT |
|---|---|

| CURRENT PROSECUTOR | COMPLAINANT<br>BUSHFAN, SGT. HENRY G. |
|---|---|

## OFFENSE AND JUDGMENT INFORMATION

```
COUNT:   1 OFFENSE DATE: SEPTEMBER 17, 2005
94C/32C/C       DRUG, POSSESS TO DISTRIB CLASS D

JUDGMENT DATE: 1/17/06              JUDGMENT JUDGE: HON. DAVID G. NAGLE JR.
JUDGMENT METHOD: GUILTY PLEA       JUDGMENT: GUILTY
PROBATION START DATE: 1/17/06              PROBATION END DATE: 1/17/07
SPECIAL CONDITIONS:
     SU SUPERVISED PROBATION ORDERED
     PM PAY MONIES ON ATTACHED "NOTICE TO DEFENDANT" TIMELY
     SP PAY ANY CHILD SUPPORT ORDER, AS DEFINED IN GL 119A §1A
     VR ALLOW PROBATION TO VISIT RESIDENCE WHEN HE/SHE REQUIRES
     AM COMPLETE ANGER MANAGEMENT PROGRAM:
     UR URINALYSIS AS REQUIRED BY PROBATION OFFICER
     ND NOT CONSUME OR POSSESS ANY ILLICIT DRUGS
        MUST NOT ABUSE VICTIM
        URINALYSIS AND ANY OTHER TESTING DEEMED NECESSARY
JAIL START DATE: 1/17/06              INSTITUTION: PLYMOUTH HOUSE OF CORRECTION
TERM OF SENTENCE:    90 DAYS
AMOUNT TO BE SERVED:
JAIL CREDIT DAYS:    CONSECUTIVE TO:              CONCURRENT WITH:
```

---

### BAIL/BOND INFORMATION

---

```
BAIL TYPE              BOND AMT SET    CASH AMT SET DATE SET JUDGE

PERSONAL RECOG                                    9/19/05 HON. JULIE J. BERNARD
```

---

### DOCKET ENTRIES

---

| DATE | CODE | DOCKET ENTRY | JUDG/MAG | ACTION DATE |
|---|---|---|---|---|

| PAGE<br>1 | DATE RECORD PRINTED<br>3/28/06 | A TRUE COPY ATTEST | CLERK/MAGISTRATE<br>*Kay P. Gunder* |
|---|---|---|---|

CRF21A 3/28/06 10:53 AM

| 1/17/06 | CULL | GUILTY PLEA/ASF COLLOQUY GIVEN | DGN | 1/17/06 |
| 1/17/06 | P | PROBATION UNTIL | | 1/17/07 |
| 1/17/06 | JE | JUDGMENT ENTERED | DGN | |
| 1/17/06 | ARMV | ABSTRACT SENT TO REGISTRY OF MOTOR VEHICLES | DGN | 1/17/06 |
| 1/17/06 | PCFI | PROBATION CONDITIONS FORM ISSUED | | |

A True Copy Attest:



| PAGE | DATE DOCKET PRINTED | A TRUE COPY ATTEST | CLERK MAGISTRATE |
|---|---|---|---|
| 2 | 3/28/06 | | Keri P. Queeler |

CRF21B 3/28/06 10:53 AM

§ 12-28        BROCKTON CODE

to help defray the costs of administering the rules and regulations as established by the chief of police.

The above list shall be in the possession of the desk officers at the city police station. When reports are received of a motor vehicle disabled on any street in the city, the desk officer shall call in rotation the licensed persons on the list described above.

To appear on the list described above, the persons shall agree in writing to indemnify and hold harmless the city from any claims or causes of action for any injuries or damages of any kind or nature caused by the towing of motor vehicles pursuant to this section.

(Ord. No. D302, 7-22-91).

Secs. 12-29—12-40. Reserved.

## ARTICLE III. GENERAL RULES OF OPERATION

**Sec. 12-41. Obedience to traffic signs, etc.**

No driver of any vehicle shall disobey the instructions of any official traffic-control signal, sign, marking, marker or legend, unless otherwise directed by a police officer.
(Code 1968, § 13-28)

**Sec. 12-42. Driving on roadways laned for traffic.**

When any roadway has been divided into lanes, a driver of a vehicle shall drive so as to be entirely within a single lane and shall not move from this lane in which he is driving until he has first ascertained if such movement can be made with safety.
(Code 1968, § 13-29)

State law reference—Similar provisions, G.L. c. 89, 14A.

**Sec. 12-43. Driving on right side of roadway.**

(a) Upon all roadways, the driver of a vehicle shall drive in the lane nearest the right side of the roadway when such lane is available for travel except when overtaking another vehicle or when preparing for a left turn.

(b) Upon such roadways as are divided by a parkway, grass plot, reservation, viaduct, subway or by any structure or area,

Supp. No. 9        988

MOTOR VEHICLES AND TRAFFIC § 12-46

drivers shall keep to the right of such division except when otherwise directed by an officer, signs, signals or markings.
(Code 1965, § 12-30)

State law reference—Driving on right, G.L. c. 89, §§ 4, 4B.

Sec. 12-44. Overtaking and passing.

The driver of a vehicle shall not overtake and pass a vehicle proceeding in the same direction unless there is sufficient clear space ahead on the right side of the roadway to permit the overtaking to be completed without impeding the safe operation of any vehicle ahead.
(Code 1965, § 12-31)

State law reference—Passing vehicle traveling in same direction, G.L. c. 89, § 2.

Sec. 12-45. Driver to give way to overtaking vehicle.

The driver of a vehicle when about to be overtaken and passed by another vehicle approaching from the rear shall give way to the right in favor of the overtaking vehicle, on suitable and audible signal being given by the driver of the overtaking vehicle, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.
(Code 1965, § 12-32)

State law reference—Giving way to overtaking vehicle, G.L. c. 89, § 2.

Sec. 12-46. Obstructing traffic unnecessarily.

No person shall drive in such a manner as to obstruct unnecessarily the normal movement of traffic upon any street or highway. Officers are authorized to require any driver who fails to



MOTOR VEHICLES AND TRAFFIC      § 12-50

comply with this section to drive to the side of the roadway and wait until such traffic as has been delayed has passed.
(Code 1965, § 13-39)

**Sec. 12-47. Obstruction of intersection or crosswalk.**

No driver shall enter an intersection or a marked crosswalk unless there is sufficient space on the other side of the intersection or crosswalk and on the right half of the roadway to accommodate the vehicle he is operating without obstructing the passage of other vehicles or pedestrians notwithstanding any traffic-control signal indication to proceed.
(Code 1965, § 13-34)

**Sec. 12-48. Following too closely.**

The driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the street or highway.
(Code 1965, § 13-35)

**Sec. 12-49. Distance between slow-moving vehicles.**

Upon roadways less than twenty-seven (27) feet wide and upon which vehicular traffic is permitted to operate in both directions, the driver of any slow-moving vehicle, when traveling outside of a business or residential district, shall not follow another slow-moving vehicle within two hundred (200) feet, but this shall not be construed to prevent such slow-moving vehicle from overtaking and passing another slow-moving vehicle. This section shall not apply to funerals or other lawful processions.
(Code 1965, § 13-36)

**Sec. 12-50. Care in starting, stopping, turning or backing.**

The driver of any vehicle before starting, stopping, turning from a direct line or backing shall first see that such movement can be made in safety. If the operation of another vehicle should be affected by a stopping or turning movement, the driver of such vehicle shall be given a plainly visible signal, as required by law.
(Code 1965, § 13-37)



§ 12-51        BROCKTON CODE

**Sec. 12-51. Sounding warning devices.**

The driver of a vehicle shall give audible warning with his horn or other suitable warning device whenever necessary to insure safe operation.
(Code 1965, § 13-43)

**Sec. 12-52. Driving through safety zone.**

It shall be unlawful for the driver of a vehicle, except on signal from a police officer, to drive the same over or through a safety zone.
(Code 1965, § 13-44)

**Sec. 12-53. Driving on road surfaces under construction or repair.**

No operator shall enter upon the road surface of any street or highway or section thereof, when, by reasons of construction, surface treatment, maintenance or the like, or because of some unprotected hazard, such road surface is closed to travel, and one or more signs, lights or signals have been erected to indicate that all or part of the road surface of the street or highway is not to be used, or when so advised by an officer, watchman, member of a street or highway crew or employee of the city, either audibly or by signals.
(Code 1965, § 13-46)

**Sec. 12-54. Driving on sidewalks.**

The driver of a vehicle shall not drive, wheel or draw upon any sidewalk except as a permanent or temporary driveway. This section shall not apply to a child's carriage pushed or drawn by hand.
(Code 1965, §§ 13-47, 23-19)

**Secs. 12-55—12-70. Reserved.**

## ARTICLE IV. STOPPING, STANDING AND PARKING GENERALLY

**Sec. 12-71. General prohibitions.**

No person shall stand or park and no person shall allow, per-

988

MOTOR VEHICLES AND TRAFFIC    § 13-72

mit or suffer any vehicle registered in his name to stand or park in any of the following places:

(a) Within an intersection.

(b) Upon any sidewalk.

(c) Upon any crosswalk.

(d) Upon the roadway in a rural or sparsely settled district.

(e) Upon a roadway where parking is permitted unless both wheels on the right side of the vehicle are within twelve (12) inches of the curb or edge of the roadway, except upon those streets which are designated as one-way streets. On such one-way streets vehicles shall be parked in the direction in which the vehicle is moving and with both wheels within twelve (12) inches of the curb. This shall not apply to streets or parts of streets where angle parking is required by this chapter.

(f) Upon any roadway where the parking of a vehicle will not leave a clear and unobstructed lane at least ten (10) feet wide for passing traffic.

(g) Upon any street or highway within ten (10) feet of a fire hydrant.

(h) Upon or in front of any private road, driveway or walk.

(i) Upon any street or highway within twenty (20) feet of an intersecting way, except alleys.

(Code 1968, § 13-46)

**Sec. 13-72. Temporary parking prohibitions.**

The chief of police is authorized to prohibit, temporarily, parking on any street or highway or part thereof in an impending or existing emergency, or for a lawful assemblage, demonstration or procession; provided, there is reasonable justification for such prohibition. Vehicles parked in places where parking is prohibited temporarily may be moved by or under the direction of any officer.

(Code 1968, § 13-16)

Supp. No.12    969

§ 12-73 BROCKTON CODE

**Sec. 12-73. Parking vehicles for sale prohibited.**

It shall be unlawful for any person to park upon a street or highway any vehicle displayed for sale. (Code 1965, § 13-59)

**Sec. 12-74. Reserved.**

**Sec. 12-75. Parking vehicles in fire lanes.**

(a) It shall be unlawful to obstruct or block a private way with a vehicle or other means within areas designated and posted as fire lanes, or to leave a vehicle unattended within areas so designated and posted.

(b) The traffic commission is authorized to enact rules and regulations governing the designation and posting of fire lanes within or upon private ways and for the removal of vehicles or other objects left unattended, obstructing or blocking fire lanes so designated and posted.

(c) The penalty for violations of this section or of the rules and regulations of the traffic commission adopted pursuant to this section, shall be one hundred dollars ($100.00) for each such offense. Each day or portion of a day that any violation is allowed to continue shall constitute a separate offense. (Code 1965, § 6-8; Ord. No. D229, 1-16-97; Ord. No. D849, 8-30-94)

**Sec. 12-76. Parking for the handicapped.**

(a) *License plates required.* It is unlawful for any person to park or leave standing any vehicle in a stall or space designated for physically handicapped persons, if said stall or space is posted or marked in a prescribed way, unless said vehicle displays distinguishing license plates issued for handicapped persons, including disabled veterans.

(b) *Property owner to provide spaces; number.* Any person or body that has lawful control of a public or private way or of improved or enclosed property used as off-street parking areas for businesses, shopping malls, theaters, auditoriums, sporting or recreational facilities, cultural centers, residential dwellings, or for any other place where the public has the right of access as

Supp. No. 12 990

§ 12-101    BROCKTON CODE

## ARTICLE V. PARKING METERS*

### Sec. 12-101. Definitions.

For the purposes of this article, the following words and phrases shall have the meanings respectively ascribed to them by this section:

*Parking meter.* Any mechanical device, not inconsistent with the provisions of this article, and placed or erected on any public way within the city for the regulation of parking. Each parking meter installed shall indicate by proper legend the legal parking time established by this article and when operated shall at all times indicate the balance of legal parking time permitted and at the expiration of such period shall indicate illegal or overtime parking.

*Parking meter space.* Any space within a parking meter zone, adjacent to a parking meter, which is duly designated for the parking of a single vehicle by lines painted on the surface of the street adjacent to adjoining each parking meter.

*Parking meter zone.* Any street or portion thereof upon which parking meters are installed and in operation and upon which



*State law reference—Parking meters generally, G.L. c. 40, §§ 22A—22C.

Supp. No. 12    990.2

§ 12-100        MOTOR VEHICLES AND TRAFFIC

invitees or licensees, shall reserve parking spaces in said off-street parking areas for any vehicle owned and operated by a disabled veteran or handicapped person whose vehicle bears the distinguishing license plate authorized by Section 2 of Chapter 90 of the Massachusetts General Laws.

| Total Number of Parking Spaces in Area | | Number of Handicapped Spaces Required | |
|---|---|---|---|
| More than | 15, less than | 25 | 1 |
| More than | 25, less than | 40 | 5%, not less than 2 |
| More than | 40, less than | 100 | 4%, not less than 3 |
| More than | 100, less than | 200 | 3%, not less than 4 |
| More than | 200, less than | 500 | 2%, not less than 6 |
| More than | 500, less than 1,000 | | 1½%, not less than 10 |
| More than 1,000, less than 2,000 | | | 1%, not less than 15 |
| More than 2,000, less than 5,000 | | | ¾%, not less than 20 |
| More than 5,000 | | | ¼ of 1%, not less than 30 |

(c) *Marking of spaces.* Parking spaces designated as reserved shall be identified by the use of the international symbol of handicapped parking and shall be identified by the use of above-grade permanent signs with white lettering against a blue background at a height of not less than five (5) feet, nor more than eight (8) feet to the top of the sign. The sign, minimum of twelve (12) inches by sixteen (16) inches, shall contain the international symbol of accessibility, i.e. a stick figure in a wheelchair, and may also include wording identifying this use.

(d) *Penalties.* The penalty for violations of this section shall be one hundred dollars ($100.00). Also, the vehicle so parked in violation hereof may be removed according to the provisions of Section 120D of Chapter 266 of the Massachusetts General Laws. (Ord. No. D152, 4-28-83; Ord. No. D164, 9-29-83; Ord. No. D248, 2-23-86; Ord. No. D249, 4-1-86; Ord. No. D362, 11-18-94)

Editor's note—Ordinance No. D162, enacted April 28, 1983, did not specifically amend this Code; hence, codification of the substantive provisions of said ordinance, as amended by Ord. No. D164, as § 12-76, is at the discretion of the editor.

**Secs. 12-77—12-100. Reserved.**

Supp. No. 12       990.1